UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SUSAN E. GERRY, | ) |
|         Plaintiff | ) |
| v. | ) No. 1:16-cv-00351-DBH |
| NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,[1] | ) |
|         Defendant | ) |

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy during an alleged closed period of disability beginning on September 6, 2012, and ending on May 1, 2014. The plaintiff seeks remand on the bases that the ALJ erred in failing to find her carpal tunnel syndrome ("CTS") severe and in determining her residual functional capacity ("RFC") based on an impermissible layperson's analysis of the raw medical evidence. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 15) at 1-9. I agree and, accordingly, recommend that the

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 17, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, Finding 1, Record at 14; that, during her alleged closed period of disability, she had the severe impairments of obesity, diabetes mellitus, and chronic obstructive pulmonary disease ("COPD"), Finding 3, *id.* at 15; that, during that period, she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could stand and walk for about four hours in a normal eight-hour day and, due to bilateral peripheral neuropathy in the feet, obesity, and pain in the feet, could sit for about six hours in an eight-hour day, that she had an unlimited ability to push and pull, other than as shown for lifting and carrying at the light exertional level, that she had to avoid climbing ropes, ladders, and scaffolding due to neuropathy, COPD, side effects of medications, obesity, and complaints of pain in the bilateral upper extremities, and that she had to avoid concentrated exposure to extreme cold and extreme heat and avoid fumes, dust, odors, gases, poor ventilation, and even moderate exposure to cigarette smoke, Finding 5, *id.* at 17; that, during that period, considering her age (48 years old, defined as a younger individual, on her alleged disability onset date, September 6, 2012), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 21; and that she, therefore, had not been disabled during her alleged closed

period of disability from September 6, 2012, through May 1, 2014, Finding 11, *id.* at 22.[3] The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Steps 2 and 4 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical

---

[3] In Finding 7, the ALJ erroneously based the plaintiff's age on her original alleged onset date of disability, August 27, 2011, and in Finding 11, he erroneously stated that she had not been disabled from that date through the date of the decision, April 22, 2015. *See* Findings 7, 11, Record at 21-22. Nothing turns on the errors, which I have corrected in setting forth his findings.

evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen*, 482 U.S. at 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Failure To Find a Severe Impairment of CTS

The plaintiff first argues that the ALJ erred in failing to find her CTS a severe impairment at Step 2. *See* Statement of Errors at 1-5. In the circumstances of this case, I agree.

As the plaintiff notes, *see id.* at 4, the ALJ did not even discuss her CTS at Step 2, *see* Record at 15-17. He addressed it at Step 4, *see id.* at 18-21, but, for the reasons that follow, that discussion fails to supply substantial evidence in support of his implicit Step 2 finding of nonseverity.

At Step 4, the ALJ noted that the plaintiff had testified that she had amended her alleged onset date of disability to September 6, 2012, because that was the date on which she first reported to her doctor that she had hand pain and that her hands "felt like lead[.]" *Id.* at 18 (quoting Record at 35). The ALJ noted that the plaintiff's doctor ordered testing revealing that the plaintiff had CTS in both hands, worse on the right side, and that she underwent CTS release surgery on her right hand in September 2013. *See id.* at 18. He noted that, (i) following surgery, her hand initially

4

felt better but began to hurt again, (ii) she took Vicodin for pain and several other medications for her other conditions with no side effects, and (iii) she testified that her hands were her biggest physical problem during the closed period, her right hand felt "fine" after the surgery and with medication, but the medication was no longer helping as much and she was developing more pain and numbness in that hand. *See id*. at 18-19 (quoting Record at 38).

He recounted her additional allegations regarding the severity of her hand pain and its functional effects as follows:

> When asked about her pain levels during the alleged closed period of disability, the [plaintiff] stated that she felt stabbing pain in her fingers "like lightning strikes" and she had tingling in her right hand. She rated her right hand pain as a "7" on a scale from "0" to "10," but it was "off and on . . . not long, maybe two minutes." Her doctor prescribed Hydrocodone for both her back and hand pain. She also used cold packs for her hand, which helped, and did gentle exercises for her hand and wrist. . . . She never underwent left carpal tunnel release, because she did not feel the surgery on her right hand was as helpful as she expected; and now she just "suffers with the pain." She has difficulty with zippers and can button a shirt, but it takes "a few minutes." She can tie her own shoes and work snaps with both hands.
>
> ***
>
> [The plaintiff] went to work in the summer of 2012 assembling smoke detectors, but the job only lasted about three weeks. It was a temporary position and they told her that her "name was on the list" and they let her go. A couple of months later, she began having the pain in her hands and w[ent] to her doctor, as she previously testified. She struggled washing dishes, sweeping floors and vacuuming was impossible. After her surgery a year later, she felt much better, but as she stated previously, the pain returned; and she does not feel she could do her current work prior to having her surgery. Since going on Lyrica, she has felt much better and does not get the "lightning bolts" in her hand.

*Id*. at 19-20 (quoting Record at 41-42, 48, 51, 53, 56).

As the plaintiff elaborates, *see* Statement of Errors at 2, following her September 6, 2012, report of hand pain to her former doctor, her hand condition was first erroneously ascribed to cardiac symptoms, a diagnosis that was ruled out through testing in January 2013, *see* Record at

5

506-07, and then to diabetic neuropathy, as a result of which, in April 2013, her podiatrist increased her Gabapentin dosage and her former doctor sent her for a physical therapy evaluation, *see* Record at 512, 590.[4] When her hand pain persisted, she transferred her care to a new primary care doctor, Karl F. Sitterly, M.D., in June 2013. *See id*. at 1186. Dr. Sitterly referred the plaintiff for EMG testing on July 22, 2013, which revealed findings consistent with mild bilateral CTS and mild bilateral ulnar neuropathies at the elbow level. *See id*. at 1056.

Following receipt of the EMG results, Dr. Sitterly referred the plaintiff to Maxime J. M. Coles, M.D., for a surgical consultation, which occurred on August 21, 2013. *See id.* at 1016-18. Dr. Coles noted:

> [The plaintiff had] longstanding bilateral hand pain and tingling and discomfort. She is to a point now where she cannot hold on [to] any objects and is dropping them. She has been seen in the past and diagnosed with bilateral carpal tunnel but did not want to have any surgical treatment but now she has no choice, and she is having so much problem [sic] and discomfort. She used to work as a cashier and has experienced extensive discomfort.

*Id.* at 1016.

The plaintiff had right carpal tunnel release surgery on September 9, 2013, which confirmed that she was in fact suffering from CTS in her right hand. *See id.* at 1013. The plaintiff testified that the surgery provided only temporary relief and that, not long afterwards, she felt stabbing pain and tingling. *See id.* at 41. In a November 12, 2013, report, Dr. Coles noted that the plaintiff had no more pain or tingling, although she occasionally had signs of tendinitis, *see id*. at 1009, and that she could "perform any kind of activity she wishes to do[,]" *id*. at 1010. However,

---

[4] The plaintiff, who is right handed, *see* Record at 62, reported to her former doctor on September 6, 2012, that she had been experiencing "burning of extremities[,]" *id*. at 450, and "pain in the hands[,]" *id.* at 452, and on October 26, 2012, that she had bilateral arm pain when attempting to fold sheets, *see id.* at 454. On December 13, 2012, she reported that "her hands get tired folding sheets and even washing her hair." *Id.* at 500. She also reported that she felt she was having a heart attack. *See id.*

6

the plaintiff complained of bilateral hand pain to Dr. Sitterly on December 12, 2013, *see id.* at 1157, and told Jennifer Bagley, FNP, on December 27, 2013, that she was taking Vicodin for wrist pain, which was making driving, writing, and cooking difficult, *see id.* at 1148. On December 10, 2013, the plaintiff's podiatrist noted that she had reported that her recovery from CTS surgery had been slow. *See id*. at 1058. The plaintiff returned to work on May 20, 2014. *See id*. at 51.

The ALJ explained that he deemed the plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible, stating, in relevant part:

> The record does not support a finding that the [plaintiff] was disabled during the alleged closed period of disability. It does reflect that she sought medical attention due to pain in her hands in September 2012, which was diagnosed as carpal tunnel syndrome; and she eventually underwent a right carpal tunnel release in September 2013. On exam, she has full range of motion in all four extremities; she has negative Phalen sign on the right; and her right upper extremity is neurovascularly intact. There are no limitations placed on the use of either upper extremity by any medical provider.
>
> ***
>
> That is not to say that the [plaintiff] did not have some limitations that affected her ability to work; but the record as a whole does not describe limitations that would have precluded all work activity during the alleged closed period.

*Id*. at 20 (citations omitted).

The ALJ, thus, addressed why he did not find the plaintiff's CTS *disabling* during the closed period. However, he never explained why he did not find it *severe*.[5] Beyond that, his

---

[5] The commissioner attempts to distinguish this case from *Bernier v. Colvin*, No. 2:14-cv-178-JHR, 2015 WL 1780148 (D. Me. Apr. 17, 2015), in which this court held that an ALJ improperly deemed a claimant's CTS impairment nonsevere in reliance on a diagnosis of "mild" CTS, an error that the court found prejudicial when the ALJ failed to supply good reasons for rejecting a treating physician's assessment of CTS-related limitations and relied on the RFC opinions of two agency nonexamining consultants who did not have the benefit of review of evidence confirming the CTS condition. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 6-7; *Bernier*, 2015 WL 1780148, at *2-*5. The court observed that, in those circumstances, the ALJ, "as a layperson, was not qualified to make a commonsense judgment that the [claimant's] mild bilateral CTS imposed no restrictions." *Id*. at *4. While it is true that, in this case, no treating physician assessed limitations resulting from the plaintiff's CTS, *Bernier* does not help the commissioner. Although the ALJ in *Bernier* supplied an invalid reason for deeming the CTS condition nonsevere, the ALJ in this case supplied no reason for his implicit finding of nonseverity. In addition, as the plaintiff's counsel pointed out at oral argument, whereas the claimant in *Bernier* had been diagnosed with mild CTS, the plaintiff was promptly scheduled for surgery after receiving her diagnosis.

7

rationale for deeming the condition nondisabling throughout the alleged closed period does not bear scrutiny. As the plaintiff's counsel noted at oral argument, even assuming *arguendo* that his client could have returned to work as of November 13, 2013, the date of the postsurgical examination on which the ALJ relied, *compare id*. at 20 *with id*. at 1009-10, that begs the question of whether, for a closed period of up to 14 months prior thereto, her hand impairment in combination with her other impairments rendered her disabled. As the plaintiff's counsel observed, records revealing improvement in his client's CTS condition following surgery do not undermine her contentions regarding the severity of the condition prior to surgery; if anything, the fact of the surgery tends to bolster her claim.

While courts overlook an "arguable deficiency in opinion-writing technique" if not outcome-determinative, *see Bryant ex rel. Bryant v. Apfel,* 141 F.3d 1249, 1252 (8th Cir. 1998), reversal and remand are warranted when failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result *via* an acceptable analytical pathway, *see, e.g., Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted). That is the case here.

The commissioner contends that any Step 2 error was not prejudicial, correctly noting that "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." Opposition at 7 (quoting *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). However, for the reasons discussed below, I conclude that the error was not harmless.

### B. Failure To Make Supportable RFC Determination

The plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence. *See* Statement of Errors at 5-9. I agree.

The record contains expert medical assessments of the plaintiff's physical RFC by agency nonexamining consultants Susan Moner, M.D., *see* Record at 92-93, and Marcia Lipski, M.D., *see id*. at 120-22. The opinion of Dr. Moner is dated February 27, 2013, *see id*. at 93, and that of Dr. Lipski is dated July 27, 2013, *see id*. at 122. Dr. Moner neither found, nor considered whether, the plaintiff had a medically determinable hand pain condition. *See id*. at 88-90. That was not surprising: the plaintiff had filed her SSD and SSI applications on August 27, 2011, prior to the onset of her hand/arm pain, and hence did not initially allege that she suffered from any such impairment. *See id*. at 88.

As Dr. Lipski noted, the plaintiff did allege on reconsideration that she had "new limitations with my arms" and had "developed pain in both of my arms." *Id.* at 117. However, Dr. Lipski found no medically determinable hand/arm impairment. *See id*. at 118. She noted that she had assessed a physical RFC "with mild limitations due to diabetic neuropathy, obesity, and COPD" and that there was "[n]o diagnosis for shoulder/arm pain[,]" "[n]o imaging[,]" and "[n]o MD exams of shoulders." *Id*.

The ALJ stated that he gave the Moner and Lipski opinions "some, but not controlling, evidentiary weight in determining" the plaintiff's RFC. *Id.* at 21. He added: "The undersigned has considered *all* of the medical evidence of record and treatment notes received during the development of the record, in conjunction with the [plaintiff's] testimony and demeanor at the

hearing, and concludes [that her] impairments, considered singly and in combination, result in the [RFC] identified above." *Id*. (citations omitted) (emphasis in original).[6]

Nonetheless, the ALJ went on to make a physical RFC finding identical to that of Dr. Lipski except that he found that the plaintiff could stand and walk for about four hours in a normal workday, rather than six as assessed by Dr. Lipski, and that, "due to neuropathy, COPD, side effects of medications, obesity and complaints of pain in the bilateral upper extremities[,]" she could not climb ropes, ladders, and scaffolding – a limitation not found by Dr. Lipski. *Compare* Finding 5, *id*. at 17 *with id*. at 120-21. Plainly, the ALJ assessed these additional restrictions based on his own lay interpretation of the raw medical evidence.

"While the First Circuit does permit an administrative law judge to pick and choose among physicians' findings and opinions, it does not permit the crafting of an RFC based on the raw medical evidence of record unless common-sense judgments about functional capacity can be made." *Eshelman v. Astrue*, No. 06-107-B-W, 2007 WL 2021909, at *3 (D. Me. July 11, 2007) (rec. dec., *aff'd* July 31, 2007) (citations and internal quotation marks omitted).

The commissioner contends that, in this case, as in *Kenney v. Colvin*, No. 2:13-cv-296-GZS, 2014 WL 3548986, at *5 (D. Me. July 17, 2014), and *Dandreo v. Astrue*, Civil No. 09-347-P-H, 2010 WL 2076090, at *5-*6 (D. Me. May 20, 2010) (rec. dec., *aff'd* June 9, 2010), the ALJ made a permissible commonsense judgment because the evidence showed that there was little or no functional impairment. *See* Opposition at 11-12. She observes that, following the plaintiff's

---

[6] In so stating, the ALJ arguably recognized that, because Drs. Moner and Lipski did not have the benefit of review of material, later-submitted evidence, their opinions could not stand as substantial evidence of the plaintiff's RFC. *See, e.g., Staples v. Berryhill*, No. 1:16-cv-00091-GZS, 2017 WL 1011426, at *5 & n.9 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017). *See also, e.g., Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008) (rec. dec., *aff'd* Dec. 1, 2008) ("[A]s a general rule, [an agency] non-examining expert's report cannot stand as substantial evidence in support of the administrative law judge's decision when material new evidence has been submitted subsequent to its issuance, calling the expert's conclusions into question."). Regardless, I conclude that remand is required.

right carpal tunnel release surgery, her physical functioning was generally normal, and no medical provider placed any limitations on her functioning. *See id*. at 12-13. Indeed, the commissioner points out, the plaintiff's own hand surgeon placed no restrictions on any activity. *See id*.

*Kenney* and *Dandreo* are distinguishable, however, in that the ALJs in those cases identified substantial record evidence in support of their RFC determinations. *See Kenney*, 2014 WL 3548986, at *5 (ALJ made a commonsense judgment that claimant was capable of performing at least medium work based on claimant's own statement that she could perform heavy work well as of the time her job ended, the absence of any indication from objective findings on examination that her condition worsened afterward, and other evidence, including relatively benign findings on examination, and evidence of the performance of activities inconsistent with her allegations of disabling pain and functional limitation); *Dandreo*, 2010 WL 2076090, at *6 (ALJ "made clear that the source of his finding of a limitation against repetitive fine manipulation was his decision to credit the [claimant's] own testimony at hearing that she had such a restriction").

In this case, the ALJ offered no explanation for his additional limitations, simply attributing the climbing restriction to a mix of impairments already found severe by Dr. Lipski plus unspecified side effects of medication and "complaints of pain in the bilateral upper extremities." Finding 5, Record at 17. The commissioner contends that, in so stating, the ALJ signaled that he captured any limitations flowing from the plaintiff's CTS. *See* Opposition at 9-10. Even assuming, *dubitante*, that this is so, the ALJ adopted Dr. Lipski's findings that the plaintiff was capable of performing light work with unlimited pushing and pulling, other than as shown for lifting and carrying at the light exertional level, with no manipulative limitations. *Compare* Finding 5, Record at 17 *with id*. at 120-21. It is not self-evident that a ban against climbing ropes, ladders, and scaffolding accounts sufficiently, if at all, for restrictions caused by hand or arm pain.

11

The ALJ's RFC determination, accordingly, is unsupported by substantial evidence.

The commissioner contends that, even if the RFC failed to account for additional limitations caused by the plaintiff's CTS, any error is harmless because a vocational expert ("VE") present at the plaintiff's hearing testified that she could perform at least one job whose tasks are not precluded by additional limitations related to her CTS, that of furniture rental consultant, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 295.357-018. *See* Opposition at 14-15. She notes that the VE testified at hearing that the job "would not require any lifting" and that the DOT indicates that it requires a low level of aptitude ability in the areas of motor coordination, finger dexterity, and manual dexterity. *See id*. at 14; Record at 63; DOT § 295.357-018. She asserts that the job requires no climbing or feeling and only occasional reaching, handling, and fingering. *See* Opposition at 14; DOT § 295.357-018; *Brigham v. Colvin*, No. 1:15-cv-00433-JHR, 2016 WL 4994990, at *3 (D. Me. Sept. 19, 2016).

Nonetheless, as the plaintiff argues, *see* Statement of Errors at 9, the responses of a VE are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record, *see, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) ("To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.").

As the plaintiff's counsel asserted at oral argument, it is too great a stretch for the commissioner simply to assume that an RFC supported by substantial evidence would be compatible with the demands of the furniture rental consultant job. If, for example, the plaintiff were found to have been limited during her alleged closed period of disability to less than

occasional use of her dominant right hand, that would rule out all work, per the VE's hearing testimony.  *See* Statement of Errors at 5; Record at 65.

Remand, accordingly, is warranted for proper assessment of the plaintiff's severe impairments, RFC, and claimed disability during the closed period of September 6, 2012, to May 1, 2014.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 7th day of July, 2017.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge